IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**MILAGRO VINEYARDS, INC.,**

        **Plaintiff,**

v.                                                                            CIV No. 02-1051 LH/LFG

**ROCKY MOUNTAIN BREWING**
**COMPANY, LTD., dba MILAGRO,**

        **Defendant.**

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**THIS MATTER** came before the Court on the Plaintiff's Motion for Preliminary Injunction with Supporting Evidentiary Materials and Memorandum of Law (Docket No. 4). The Court conducted an evidentiary hearing on September 26, 2002.

In its Complaint, Plaintiff alleges trademark infringement, resulting in a likelihood of confusion and actual confusion. Plaintiff seeks issuance of a preliminary and permanent injunction to prohibit use of the trademark and tradename "Milagro" in many commercial contexts (Complaint, pp. 7-9). Plaintiff also seeks compensatory and punitive damages and an accounting as to Defendant's profit gained. Also pending before the Court are Plaintiff's Motion for Order to Show Cause (Docket No. 2), and Plaintiff's Motion for Expedited Discovery (Docket No. 3). The Court, having considered the motions and briefs of the parties, as well as relevant case law, concludes that none of Plaintiff's motion is well-taken and that all three shall be **denied**. Specifically, no preliminary injunction will issue for the reasons that follow.

1

## I. Legal Standards

A preliminary injunction will be granted in this case if Plaintiff, Milagro Vineyards, Inc., establishes the following: (1) substantial likelihood that it will eventually prevail on the merits; (2) a showing that it will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to it outweighs whatever damage the proposed injunction may cause to Defendant Rocky Mountain Brewing Company, Ltd., dba "Milagro"; and (4) a showing that the injunction, if issued, would not be adverse to the public interest. *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980).

Plaintiff's complaint arises under the Lanham Act, which prohibits the unauthorized use of a reproduction, copy, or imitation of a registered trademark in a way that "is likely to cause confusion" with the registered mark. 15 U.S.C. § 1125(a).

"The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992).

## II. Findings of Fact.

At the hearing before the Court, the parties stipulated to these facts:

1. Plaintiff, Milagro Vineyards, Inc. is a corporation organized and existing under the laws of the State of New Mexico, with its principal place of business at 3810 Academy Parkway, N.E., Albuquerque, New Mexico, 87109. Milagro Vineyards, Inc. operates a winery and tasting room at 985 West Ella, Corrales, New Mexico, 87048, and owns vineyards also located in Corrales.

2. The owners of Milagro Vineyards, Inc. are Mitzi and Rick Hobson.

3. In 1985 Milagro Vineyards began growing grapes for the making of wine. It made wine in small quantities until 1998, when the owners decided to create a business from what had been a hobby. At that time, Milagro Vineyards became a bonded facility. The first "Milagro Vineyards" brand wine was sold in June 1999. The corporation, which had gone by a different name previously, changed its name on March 2, 1999 to "Milagro Vineyards, Inc.".

4. Milagro Vineyards, Inc. adopted a tradename, the term "Milagro Vineyards", which it used on labels to identify its wine. Milagro Vineyards, Inc. has continuously and prominently used the "Milagro Vineyards" trademark from June 1999 to the present. It has also used the corporate name "Milagro Vineyards, Inc." and the trade name, "Milagro Vineyards" since its name change in early 1999.

5. Wine sales for Milagro Vineyards have increased over the years from 100 cases in 1999 to sales projected for the year 2002 of 1,000 cases.

6. The trademark "Milagro Vineyards" was registered in the State of New Mexico on October 3, 2001 for a "vineyard and winery".

7. Milagro Vineyards has advertised its wine in the *Corrales Comment*, and has promoted its wine in literature distributed by the New Mexico Wine Growers Association.

8. Milagro Vineyard's wines are offered through two websites. Milagro Vineyards communicates with customers through an e-mail address. Its presence on the Internet has resulted in out-of-state sales.

9. Milagro Vineyards promotes its wine through appearances at various festivals, fairs and other public events.

10. On approximately April 24, 2001, Defendant Rocky Mountain Brewing Company, Ltd., dba Milagro, opened a facility on Highway 550 in Bernalillo, New Mexico. This facility contains a wine shop, a package liquor store, a micro-brewery and a restaurant/grill. The road sign identifying this facility is shown in Exhibit 2 to the Complaint.

11. Larry Logan is one of the owners of the Rocky Mountain Brewing Company.

12. Defendant sells its beer under labels shown in Exhibit J.

13. Defendant has advertised its services and products in newspapers such as the *Corrales Comment.* Exhibit 3 to the Complaint shows one such advertisement, published on November 24, 2001. Exhibit 3 show an advertisement for Milagro Vineyards, Inc. in the same issue of this newspaper.

14. In the summer of 2001, Milagro Vineyards, Inc. became aware of the opening of Defendant's brewery, wine shop and restaurant/grill, and that it was doing business as "Milagro".

15. Mitzi and Rick Hobson met with Larry Logan and objected to what they considered to be his use of their trademark and tradename. In October 2001, through its counsel, Milagro Vineyards, Inc. notified Defendant that it was infringing on its trademark rights and demanded that Defendant stop the use of the word "Milagro" in its business. To date, Defendant has refused to discontinue use of the word "Milagro" in its business.

16. Defendant sells wine in its shop and restaurant and promotes the sales of wine.

17. The wine sold by Defendant does not have the trademark or tradename "Milagro". Defendant currently makes three beers that are marketed under the "Milagro" name, namely Milagro Silver, Milagro Gold and Milagro Bronze.

These additional facts, adopted by the Court, were established at the hearing:

18. Plaintiff first listed its business in the yellow pages of the telephone directory in the 2002 edition.

19. Plaintiff's label on its bottles of wine is black with a pot-belly pig. The label contains large letters for the word "Milagro" and directly under this word, in smaller letters is the word "Vineyards."

20. Defendant's logo, used on its beer bottle and in some of its advertising, has the word "Milagro" in large letters, with smaller words ("Grill", "Brewing" and "Wine & Spirits") beneath. A shell or flower motif is included. Defendant's font for the word "Milagro" is somewhat similar to that used by Plaintiff, however with the exception of the word "Milagro", there are no other visual similarities between the logos and labels used by the parties.

21. At the time that Defendant selected its name and went into business, it was unaware of the existence of the Milagro Vineyard.

22. Plaintiff obtained its tradename registration with the State of New Mexico after Defendant selected the name for its business and opened for business.

23. Plaintiff has sold out its inventory every year that it has commercially sold its wine.

24. Plaintiff primarily gets customers through advertisement and participation at wine festivals and on the Internet. It also sells wine by appointment at its Corrales winery.

25. Plaintiff's customers are moderately sophisticated and knowledgeable about wine, although they would not be considered "connoisseurs."

26. Defendant does not advertise at wine festivals or on the Internet.

27. Plaintiff's concern is that if a customer is confused about the identity of the two parties, s/he will purchase wine at Defendant's shop rather than from Plaintiff. Plaintiff has no knowledge

that this has in fact occurred.

28. The businesses of the two parties are located approximately fifteen (15) miles apart.

29. There was some evidence that an unspecified number of customers thought that the same people who owned and/or operated the vineyard also owned and/or operated the restaurant and brewery.

30. Plaintiff claims injury to its business in terms of loss to future business and loss of control of the reputation for quality of its product in the market place. These claimed injuries are unsubstantiated and speculative.

31. The term "milagro" is widely used by businesses throughout the State of New Mexico.

### III. Conclusions of Law

#### A. Irreparable Harm

To be entitled to a preliminary injunction, Plaintiff must establish irreparable harm, that is harm that could not be compensated, should it prevail at trial. There is a complete lack of proof of harm to Plaintiff. The only evidence before the Court is that the Plaintiff has sold all of its inventory of wine, each year that it has commercially sold wine. Ms. Hobson testified that while she was concerned about Plaintiff's customers purchasing wine from Defendant rather than from Plaintiff, she testified that she had no knowledge that in fact this occurred. Mr. Hobson testified that his corporation had been harmed in terms of loss to future business and loss of control of reputation of its product in the market place. As noted above, this is speculative and it is unsupported by any proof. The Court concludes that Plaintiff has failed to establish that it will suffer irreparable injury.

### B. Substantial Likelihood of Success on the Merits

#### 1. Likelihood Of Confusion

"Confusion occurs when consumers make an incorrect mental association between the involved commercial products or their producers." *San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.*, 483 U.S. 522, 564 (1987). The party alleging infringement has the burden of proving likelihood of confusion. *See Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1484 (10th Cir. 1997). Likelihood of confusion is a question of fact. *Id*. The Court must consider the following factors that are relevant to a determination of whether a likelihood of confusion exists. *Universal Money Ctrs., Inc. v. American Tel. & Tel. Co.*, 22 F.3d 1527, 1530 (10th Cir. 1994).

##### a. The degree of similarity between the marks.

This is the most important factor. *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084 (10th Cir. 1999). Each mark must be considered as a whole. *Universal Money Ctrs., Inc.*, 22 F.3d at 1531. This is tested on three levels: sight, sound and meaning. The marks should be considered in their entirety and as they appear in the marketplace. *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 940 (10th Cir. 1983); *Heartsprings, Inc. v. Heartspring, Inc.*, 143 F.3d 550, 554 (10th Cir. 1998). This Court should not engage in a side-by-side comparison, but instead determine "whether the alleged infringing mark will be confusing to the public when singly presented." *Universal Money Ctrs., Inc.*, 22 F.3d at 1531.

Plaintiff's labels indicate that it is a vineyard while Defendant's labels and advertising materials indicate that it is a grill, brewery and wine and spirits business. The only overlap in use for the word "milagro" is the fact that both parties sell wine. The marks, considered as a whole and as

7

used are not visually similar, except for the actual word "milagro". The two marks are visually distinct and bear no similarity beyond the obvious use of the word "milagro". Plaintiff's actual protected mark is "Milagro Vineyard", *not* "milagro".

Insofar as appearance in the marketplace is concerned, the facts indicate that the Plaintiff primarily obtains wine-purchasing customers from Internet sales, wine festival sales, and sales at its Corrales winery. Defendant does not obtain customers from any of these sources. Plaintiff is solely engaged in the sale of wine, made from grapes grown at its vineyard. Defendant is primarily engaged in the restaurant and brewery business, but also maintains a "wine and spirits" shop.

The Court must consider the parties' trademarks in their entirety as they are experienced by consumers in the marketplace, and is not free to focus *solely* on name similarity. *Heartsprings, Inc.*, 143 F.3d at 555. Given these factors as to how the parties' trademarks appear and are experienced by consumers in differing marketplaces, without focusing only on the commonality of the word "milagro", I conclude that this factor weighs in favor of Defendant.

### b. The intent of the alleged infringer in adopting its mark.

The relevant inquiry is whether or not Defendant intended to create confusion as to the source of its products or services in order to derive benefit from Plaintiff's already-established reputation or good will. *Universal Money Ctrs., Inc.*, 22 F.3d at 1532; *Jordache Enterprises, Inc.*, 828 F.2d at 1485. The only evidence before the Court is that Defendant was not aware of Plaintiff's existence at the time that Defendant chose its name and went into business. There is no evidence or inference of any intent by Defendant to create confusion in order to benefit from Plaintiff's already established reputation or good will. This factor weighs in favor of Defendant.

### c. Evidence of actual confusion.

Evidence of actual confusion within the marketplace is strong evidence of a likelihood of confusion. *Universal Money Ctrs., Inc.*, 22 F.3d at 1534.

Based on the affidavits in the record and the testimony of Roger Finzel, John Hollingsworth and Dennis White, an unspecified number of customers thought that the people who owned and/or operated the vineyard also owned and/or operated the restaurant and brewery. There is no evidence that, due to confusion, anyone actually purchased wine from Defendant rather than from Plaintiff. Given this proof of very limited confusion, I conclude that this factor weighs somewhat in favor of Plaintiff.

### d. The relation in use and the manner of marketing between the goods or services marketing by the competing parties.

A guideline here is that the greater the similarity between the products and the services, the greater likelihood of confusion. *King of the Mountain Sports, Inc.*, 185 F.3d at 1092. Similarly, the greater the degree of overlap in the marketing approaches of the two entities, the greater the likelihood of confusion. *Universal Money Ctrs., Inc.*, 22 F.3d at 1532. As to similarity between the products and services, the facts show that Defendant's primary products and services involve its restaurant and brewery, while Plaintiff is solely engaged in the growing of grapes and sales of wine. There is some overlap in that Defendant has a "wine and spirits shop". As to the marketing approaches, there was considerable testimony about the marketing avenues employed by Plaintiff, none of which is used by Defendant. This factor weighs in Defendant's favor.

### e. The degree of care likely to be exercised by purchasers.

The general rule is that sophisticated customers are less likely to be confused. Plaintiff's

customers are careful consumers, "like good wine", but are not characterized as "connoisseurs." I conclude that they are not easily confused and in fact none of them testified that he mistakenly purchased wine from Defendant, believing that he was buying Plaintiff's product. This factor weighs in Defendant's favor.

### f. The strength or weakness of the marks.

The stronger a trademark, the more likely that encroachment upon it will lead to sponsorship confusion. *See King of the Mountain Sports, Inc.*, 185 F.3d at 1093. To analyze the relative strength of a mark, one must consider the two aspects of strength: (1) conceptual strength: the placement of the mark on the distinctiveness or fanciful-suggestive-descriptive spectrum; and (2) commercial strength: the marketplace recognition of the mark. *Id.*

First of all, I note that there was no evidence as to the commercial strength of Plaintiff's mark, "Milagro Vineyard", i.e., their marketplace recognition.

Plaintiff's protected mark is "Milagro Vineyard", *not* the word "milagro". While the term "milagro" is not descriptive, obviously the word "vineyard" is. A suggestive mark is one that suggests some quality or ingredient of the goods. *Id*. The term "milagro" is a Spanish word and implies miraculous qualities. Construing this two-word term in the light most favorable to Plaintiff, I conclude it is suggestive on the conceptual strength spectrum, which would be surpassed in strength only by an arbitrary mark.

I emphasize that Plaintiff has an interest only in the two-word term "Milagro Vineyard", yet Plaintiff seeks to assert an interest in the word "milagro". This is incongruent. Secondly, I note that there was evidence that the term "milagro" is widely used in business names in New Mexico. "A strong trademark is one that is rarely used by parties other than the owner of the trademark, while

10

a weak trademark is one that is often used by other parties." *Exxon Corp. v. Texas Motor* Exch., 628 F.2d 500, 504 (5th Cir. 1980)(*quoted in Universal Money Ctrs., Inc.*, 22 F.3d at 1533). "The greater the number of identical or more or less similar trademarks already in use on different kinds of goods, the less is the likelihood of confusion" between any two specific goods incorporating the weak mark. *Exxon Corp.*, 628 F.2d at 504. The fact that the term "milagro" is frequently used by other parties, operates to dilute the strength of its use in Plaintiff's trade name, and to dilute what would otherwise be a relatively strong mark. Coupled with the fact that Plaintiff does not have a protected interested in the single word "milagro", I must conclude that this factor weighs in Defendant's favor.

### g. Balance of the Six Factors

No one of these six factors is dispositive and the determination of likelihood of confusion must be based on consideration of all relevant factors. *Beer Nuts, Inc.*, 805 F.2d at 925. I conclude that the overall weight of these factors is in favor of Defendant. Because the evidence presented fails to raise questions "so serious, substantial, difficult [or] doubtful as to make the issues ripe for litigation," *Walmer*, 52 F.3d at 854, the Court concludes that Plaintiff has failed to establish a likelihood of success on the merits of its confusion claim under the Lanham Act.

### C. Whether the Balance of Harm Favors Plaintiff or Defendant

Plaintiff has demonstrated no harm to it by virtue of Defendant's use of the name "Milagro" in conjunction with its restaurant, brewery and wine and spirits shop. Although Defendant presented no evidence as to what harm it would incur if required to undergo a complete name change, Plaintiff has not demonstrated that the balance of harm favors it.

### D. Whether a Preliminary Injunction Would be Adverse to the Public Interest

As above-noted, the term "Milagro" is widely used by New Mexico businesses. Plaintiff's actual tradename is "Milagro Vineyard". They have no actual protection for the name "Milagro". Given these factors as well as the largely different use of the name "Milagro" by these two parties, I conclude that it would be detrimental to the business community and to trademark law to grant an injunction under these circumstances. Plaintiff has not demonstrated to the contrary.

In conclusion, Plaintiff has failed to the prerequisites necessary to entitled it to injunctive relief. Accordingly its Motion for Preliminary Injunction with Supporting Evidentiary Materials and Memorandum of Law (Docket No. 4) is **denied**.

### IV. Other Motions

Plaintiff's Motion for Order to Show Cause (Docket No. 2) and Plaintiff's Motion for Expedited Discovery (Docket No. 3) both relate to Plaintiff's motion seeking a preliminary injunction. This motion having been denied, these other two motions are denied as moot.

**WHEREFORE**, Plaintiff's Motion for Preliminary Injunction with Supporting Evidentiary Materials and Memorandum of Law (Docket No. 4) is hereby **denied**. Plaintiff's Motion for Order to Show Cause (Docket No. 2), and Plaintiff's Motion for Expedited Discovery (Docket No. 3) are **denied.**

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**